# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amy L. WADE,<br><br>                    Plaintiff,<br><br>v.<br><br>Nancy A. BERRYHILL,<br><br>                    Defendant. | Case No.: 16-cv-1163-CAB-AGS<br><br>**REPORT AND RECOMMENDATION ON SUMMARY JUDGMENT MOTIONS (ECF Nos. 19 & 25-1)** |

Life is full of controversial calls: NFL fans still debate whether a famous catch—the "Immaculate Reception"—was a legal play; *Citizen Kane*, sometimes called the greatest film of all time, lost the Best Picture Oscar; Mahatma Gandhi had five Nobel Peace Prize nominations, but no awards. Does this social security case present yet another contentious result? No. The Administrative Law Judge gave five convincing reasons for rejecting the claimant's testimony, which doomed her disability application. The record supports those reasons—overwhelmingly.

## **BACKGROUND**

At the time of her disability hearing, plaintiff Amy Wade was working part-time in a grocery store for $8.25 per hour. (AR 12, 15.) Wade is unable to work more, she asserts, because of her bipolar disorder, Type 1 diabetes, and cervical spine fusion. (AR 12, 15-16.) In denying her disability application, the Administrative Law Judge found that Wade's

testimony was not "entirely credible" and that she had "exaggerated her symptoms." (AR 24, 26.) In this appeal, Wade challenges only the ALJ's credibility finding.

## DISCUSSION

**A. Subjective Testimony on Severity of Symptoms**

In evaluating the credibility of subjective symptom testimony, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). If so, and absent evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Id*. (citations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (citation omitted). These adverse credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (citation omitted). In weighing that testimony, the ALJ may consider all the typical credibility factors, such as prior inconsistent statements, falsehoods, and discrepancies between the claimant's statements and conduct. *Ghanim*, 763 F.3d at 1163.

The ALJ's reasons for rejecting Wade's symptom testimony are evaluated below.[1]

**1.** *Objective Medical Evidence*

The ALJ found that the medical evidence suggested that Wade could do a "wide range of unskilled light work" and that her testimony to the contrary was not credible,

---

[1] Defendant identifies several other reasons that support the ALJ's adverse credibility finding. For instance, Wade once admitted that she was "applying for Disability not because she [i]s unable to work but because she needs some Medi-Cal insurance to help pay for her medications." (ECF No. 25-2, at 6; AR 347.) But the ALJ did not raise these arguments. And this Court "may not affirm the ALJ on a ground upon which he did not rely." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations omitted). Thus, the Court will not consider these post-hoc justifications.

2

"especially in light of the paucity of clinical deficit[s] noted upon physical examinations and diagnostic studies." (AR 23-24.) Wade argues that her testimony cannot be rejected on this ground alone. While true, the ALJ did not err in mentioning it as one of several reasons. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that "medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects," though it cannot be "the sole ground" for rejecting "subjective pain testimony" (citation omitted)).

### 2. *Conservative Treatment*

Wade also does not contest the ALJ's finding that she received "relative[ly] conservative treatment" and showed "improvement with treatment and/or medications." (AR 23.) "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). And a favorable "response to conservative treatment undermines [a claimant's] reports regarding the disabling nature of his pain." *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The ALJ pointed out that Wade was "seen repeatedly in the hospital for complaints of abdominal pain," but her examinations yielded "few abnormalities" and mostly "unremarkable findings that support a light work restriction." (AR 17-18.) And even when Wade reported acute symptoms, conservative treatment provided rapid improvement. (*See, e.g.*, AR 18 (noting that Wade was "treated successfully and discharged" after a hospitalization for diabetic complications); AR 19 (remarking that Wade was effectively stabilized with an insulin drip and then a transition "to Lantus and [an] insulin sliding scale"); AR 20 (finding that "treatment proved helpful as the claimaint was admitted with a [GAF] score of 45" and six days later discharged "with a GAF score of 58").) This rationale is clear and convincing. *See Parra*, 481 F.3d at 750 (upholding adverse credibility finding, when the ALJ referred to "specific evidence in the record, including numerous medical reports," that contradicted the plaintiff's "subjective complaint").

3

### 3. *Daily Activities*

According to the ALJ, Wade's "active lifestyle" was also "inconsistent" with her complaints of "limitations that would preclude sustained work activity." (*See* AR 19.) The ALJ's daunting list of Wade's daily activities includes: "personal care and hygiene, prepare simple meals on a daily basis, wash dishes by hand, clean, vacuum, water plants, pull weeds, sweep, drive, go shopping, watch television all day long, wash dishes, do laundry, cook, do yard work, read, use a computer, help her parents with housework, and take care of her daughter." (*Id.*) A claimant "need not vegetate in a dark room" to be eligible for benefits, but these sorts of everyday activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment" and indicate "capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted).

Wade does not dispute the ALJ's daily-activity catalog, but instead complains that she "testified" that she can only perform those activities "for short periods of time before needing to rest." (ECF No. 19-1, at 13.) But Wade provided no citation for this claim in her papers, nor does the hearing transcript reveal any such testimony. (*See* AR 33-55.) At oral argument, Wade's counsel relied on an adult function report, in which Wade wrote that she needs to rest for "a few minutes" after walking 50 yards. (*See* AR 234.) Yet the ALJ's analysis did not focus on Wade's walking habits. (*Compare* AR 19 (ALJ's daily-activity explanation) *with* AR 16 (summarizing Wade's testimony, including that she "tries to walk half an hour in the morning and sometimes half an hour after work").) And the cited report does not address any of the activities the ALJ did focus on. (*See* AR 19.) Moreover, Wade herself contradicted the claim that she rests every 50 yards. At her hearing, she testified that she only had problems if she "walk[s] for long periods of time and my pain medication wears off. . . . But if I have my pain medication, . . . I'm all right." (AR 45; *see also* AR 15 (ALJ noting this testimony).) Thus, Wade's significant daily activities are an appropriate basis for discounting her symptom testimony.

#### 4. *Noncompliance with Treatment*

The ALJ also determined that Wade's "failure to take her prescribed medications may have contributed to her symptoms." (AR 20.) In the ALJ's analysis, he noted that one "factor in her noncompliance" was that she was often unable "to afford medication" or "to access her medications in a timely fashion." (*Id.*; *see also* AR 16.) Yet the ALJ found these financial constraints were ultimately not dispositive and that she failed to adhere "to her diabetic diet and eats whatever her parents provide her with." (AR 20.) While claimants may not be penalized for their poverty, an "ALJ may properly rely on [an] unexplained or inadequately explained failure . . . to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (citation and quotation marks omitted); *see also Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) (holding that when a claimant was "noncompliant with medication because she could not afford it," the ALJ could not discount her credibility, but noncompliance that is unrelated to poverty "may properly be weighed against finding [the claimant's] testimony to be believable").

Because the ALJ accounted for Wade's financial difficulties in his analysis, he properly faulted her for voluntary noncompliance with her treatment regimen.

#### 5. *Post-Onset Work Activity*

Wade's "work activity after the alleged onset date" led the ALJ to believe "that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (AR 21.) At the time of the hearing, Wade was "working for Albertson's as a deli service worker 3-5 days per week, and 3-8 hours per day mostly at night." (AR 15.) She admitted that she "sometimes works consecutive eight-hour shifts" by taking them "an hour at a time." (AR 16.) But she testified that her current job leaves her in too much pain, and she would only be able to go on working if she is transferred to a different department that involves "no heavy lifting." (*Id.*)

Post-onset work activity is a proper credibility consideration when it contradicts claims of disabling pain or other physical limitations. *See Trisdale v. Astrue*, 334 F. App'x 85, 87 (9th Cir. 2009) (holding that "work activity after the accident" was a "clear and

5

convincing reason[] supporting the ALJ's" adverse credibility conclusion); *Casas v. Comm'r of Soc. Sec. Admin.*, No. 16-cv-08082-PCT-JAT, 2017 WL 2222613, at *6 (D. Ariz. May 22, 2017) (upholding negative credibility finding in which "the ALJ cited to specific work activity to discredit" the plaintiff's assertions about "disabling pain"). At least sometimes, Wade was able to work for 16 hours straight (AR 16), which was a clear and convincing basis to disbelieve her testimony about the severity of her symptoms.

### 6. *Unemployment Benefits*

Next, the ALJ concluded that Wade's complaints could not be reconciled with her acceptance of "unemployment benefits since the alleged onset date," because unemployment-benefits applicants "must certify they are willing and able to work." (AR 20.) "[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work full[-]time," but only if the claimant "held himself out as available for full-time" work. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citations omitted and emphasis added). An unemployment-benefits application that merely certified an ability to work part-time would not undermine a disability claim. *See id.* The record does not disclose the basis of Wade's unemployment claim. (*See, e.g.*, AR 193-95.) So, this justification for the ALJ's credibility finding is not supported by substantial evidence. *See Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (holding that courts cannot accept an "ALJ's findings" which "are not supported by substantial evidence in the record" (citation omitted)).

### 7. *Lack of Regular Psychiatric Treatment*

Finally, the ALJ disbelieved Wade's symptom testimony because she had not sought regular psychiatric treatment "throughout much of the period under adjudication." (AR 19, 23.) But Wade testified that she was too poor to schedule regular treatment. (*See, e.g.*, AR 47.) Unlike his thorough analysis of Wade's treatment noncompliance, in discussing the gaps in her mental-health treatment history, the ALJ did not grapple with the issue of her poverty. An ALJ may not fault the claimant for a "lack of treatment when the record establishes that the claimant could not afford it." *Regennitter v. Comm'r of Soc. Sec.*

6

*Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). Thus, Wade's spotty psychiatric treatment record does not provide any grounds to reject her symptom testimony.

B.   **Harmless Error Analysis**

Because the ALJ relied on two invalid reasons—and five valid ones—for disbelieving the severity of Wade's symptoms, this Court must review for harmless error. "So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such [error] is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162 (alterations and citations omitted). The five remaining reasons here are specific, clear, convincing, and supported by substantial evidence in the record—indeed, two of them are undisputed. They justify the ALJ's credibility finding by themselves, so the erroneous employment-benefits and psychiatric-treatment rationales were harmless. *See id.* at 1162-63 (holding two invalid reasons for an adverse credibility finding were harmless error in light of the remaining reasoning); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that one erroneous reason "amounts to harmless error," when the ALJ "presented four other independent bases for discounting [the claimant's] testimony").

## CONCLUSION

The Court recommends that Wade's summary judgment motion (ECF No. 19) be **DENIED** and the Commissioner's cross-motion for summary judgment (ECF No. 25-1) be **GRANTED**. The parties must file any objections to this report by January 31, 2018. *See* Fed. R. Civ. P. 72(b)(2). Any responses must be filed by February 14, 2018. *See id.*

Dated: January 17, 2018

Hon. Andrew G. Schopler
United States Magistrate Judge